## J. Charles Bedell, Plff. in Err., *v.* John Errett et al

The supreme court will only reverse a judgment for an error which would reasonably or probably affect the result.

In an action to recover a balance on a building contract the defendant claimed that the houses were to be finished on a certain day, and that there should be set off against the balance claimed the rental value of the houses during the period of delay. The court charged that the jury could take as the measure of damages the rental value and deduct therefrom interest on the amount due during the period of delay. The jury found that no certain day had been fixed for the completion of the houses. *Held,* that the error in the charge was cured by the verdict and was no ground for reversal.

The court in its charge stated that one of the jurymen knew more about the specifications of a building contract than the court. *Held,* not to be a sufficient ground of reversal.

(Argued October 24, 1887. Decided November 7, 1887.)

October Term, 1887, No. 14, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to Common Pleas No. 2 of Allegheny County to review a judgment in favor of plaintiffs in an action of assumpsit. Affirmed.

This action was brought by John Errett and John Davis, partners, as Errett & Davis, for use of William Hill, assignee, against J. Charles Bedell for balance alleged to be due on a building contract.

---

NOTE.—The complaint in this case was based largely on the fact that the jury was told to deduct the interest on the money due the contractor in estimating the damages from loss of rental value. For the liability for interest on deferred payments under contracts, see note to Bates v. Wynn, 7 Sad. Rep. 190.

The facts are fully stated in the charge of the court below, EWING, J., as follows:

About the first of May, 1883, J. Charles Bedell, being the owner of a large lot of ground in Mansfield, entered into a contract with the plaintiffs, Errett & Davis, to construct for him on his lot four houses, two of them being in fact double houses, making six dwellings in all, one of the six being of brick with a store room in the lower story, the contract price being $7,375; and it is conceded that some extra work was done by direction of Mr. Bedell, and there is no dispute as to price, except as to one item of that extra work, the plaintiffs claiming $16, while the defendant offers testimony to show that $7.50 or $8 would be a proper price for it. Payments have been made before and since the bringing of this suit, which reduce the amount to $986.68, if you allow the plaintiffs' price for the extra door and $978.68 if you take the price claimed by defendant.

The first dispute that arises is in regard to the terms of the contract. It seems that there was a plan made, and there are specifications; and except as to these plans and specifications, the contract was verbal; and thereupon we have the not uncommon result, a misunderstanding. You are the judges of the credibility of the witnesses. If I were on the jury, I would have no hesitation in concluding that the parties on both sides honestly believed what they now say as to the contract. People will disagree, and you must determine between them.

The first and most important item of difference in regard to the terms of the contract is as to the time those houses were to be completed. Mr. and Mrs. Bedell say they were present when the making of the contract was completed with Mr. Errett, of the plaintiffs' firm, and that there was a distinct agreement that the houses should be finished by the first of August. Mr. Errett says there was no such agreement—no time definitely fixed. Mr. Davis says he was not present, but that it was talked about repeatedly in the presence of Mr. Errett and Mr. Bedell and that the understanding of what was said was that they were to be finished before the winter set in; and Mr. Hill, assignee of these plaintiffs, says that in numerous interviews with Mr. Bedell there was no complaint made to him about their not being finished in accordance with the time mentioned, although there were numerous complaints about other matters.

Now it becomes one of the important questions of fact for you to determine as to what that contract was. If the plaintiffs agreed to finish the houses by August 1, then they are liable for any damage that resulted to the defendant by reason of their not being completed at that time. If they did not agree to complete them at any definite time, then the contract would be that they must complete them in a reasonable time under all the circumstances, taking into account the amount of the contract, kind of houses and the season [and if they did not complete them within a reasonable time they would be bound to deduct the damages that Mr. Bedell suffered.

The most obvious way of getting at these damages, if you find that the defendant is entitled to any, would be to find what the houses would rent for, what he would have received for them between the time they should have been ready for occupancy and the time they were ready, and perhaps deducting from that, interest on the money he would have had to pay them so much the earlier. If he did not pay what he was to pay at the first of August if they had been finished then, there would be some deduction to make for interest on the amount of money withheld.] 1

But the most natural way is the loss of rent that would accrue. There is a difference in regard to the time at which the payments were to be made. Mr. Errett says they were to be made along in proportion to the work done—as they progressed; Mr. Bedell says that two thirds was to be paid as they went along, and one third was to be reserved until the completion of the houses; and a very important question is as to the date when interest would begin. If one third was to be held back until they were finished, then the interest would not begin until that time, and I am inclined to think that even on this balance that is left at the time you may fix upon as the time for the completion of the houses—if you find any balance—that [the beginning of the running of interest would be when the houses were substantially finished or when they were ready for occupancy.] 2

The parties differ in regard to the time they were ready for occupancy, Mr. Errett and Mr. Davis both saying they were all ready for occupancy before they made their assignment in December, and they give the date at which one of the houses was ready for occupancy as in September and the other October, while Mr. Bedell says the first house was not ready until the

first of October, when Mr. Davis, the attorney, went into it, and the other not until the first of November, and that the brick house and the double house in the rear were not ready for occupancy until the first of April. This is another question of fact which you will have to settle.

Perhaps the matter upon which there has been the most contest is as to whether or not the houses were built in accordance with the plans and specifications. [The specifications will be sent out with you, and there are several gentlemen on the jury who are very familiar with building and with specifications—one especially who knows a great deal more than we do about this matter.] 3

. [But I must say this,—that plans and specifications never give absolutely every little detail. A great deal must be left and is left in all cases, to the common manner of finishing a building and doing work as understood by workmen, and without any specification. Work is to be done in a reasonably substantial, fair manner, in accordance with the particular class of building on which it is being done. As I suggested yesterday, if you are building a common stable and are bargaining about the lumber to go in it, you take what is ordinarily used for such a building, and you put upon it the style of workmanship that is ordinarily expected. If you are building a $500 house it is not expected that the same sort of expensive work will go on it as would be put on a $20,000 house.] 4

Now the plaintiffs say that they have built these houses fairly in accordance with the specifications; and the defendant says they have not. A great deal of testimony has been offered about it on each side and counsel has gone over that testimony and we will not undertake to do so. If plaintiffs have finished the houses fairly and thoroughly—or substantially so, throughout, in accordance with the plans and specifications, the mere fact of little trifling matters being overlooked, that were remedied thereafter, would not prevent the plaintiffs from receiving the full contract price. But they were bound to comply with their contract in good faith; and if they have not done so, the defendant is entitled to deduct from the contract price the damage he has suffered. There are various things mentioned as defective; for instance, it is alleged that the plastering is cracked; the walls crooked; and I do not know that we have a better illustration of what I want to impress on you than in that matter. The de-

fendant was entitled, we will say, to have that wall straight. He might have refused if the buildings were not finished according to the contract to pay for them until they were so finished. He took possession of them and is enjoying them; therefore he can simply deduct the less value of the houses, as he got them, from what they would have been if they had been finished in accordance with the contract, and it does not follow that the cost of remedying the defect that exists is necessarily the damage; and to go back to the illustration of the plastering—now it may be that the plaster being off a little panel of this size would require the replastering of the entire room. It would require the whole of the work proposed to be taken off at a very large expense, while the lessening of value on account of the crookedness under that panel might have been very slight. The damage is, not what it costs to do that, but how much less is the house worth with that defect in it than if it was straight. The question is, How much less is the house worth than it would be if it were finished in accordance with the contract, provided you find that it has not been so finished; and as you find the facts so you will find your verdict, either for the plaintiffs for some amount and adding interest from the time the houses were finished; or if you find that the buildings were not finished in accordance with the contract and the defendant has suffered damage, you will deduct that. If you find his damage equals the balance you will find for defendant.

The verdict and judgment were for the plaintiffs for $997.68.

The assignments of error specified the portions of the charge inclosed within brackets, and are designated by exponents, respectively.

*Henry D. Davis,* for plaintiff in error.—The court erred as stated in the first assignment of error in charging the jury that in estimating the damages for the delay in the completion of the buildings they should deduct from the rental value of the buildings during the period of delay, interest on the money, the payment of which was delayed by the detention in completing the work.

This seems to be error because it charges the defendant below with interest on money which the contract made it his duty to keep uninvested and ready for payment from the time the work

should have been finished, and the payment of which was delayed by the conduct of the plaintiffs above, and by no default on the part of the defendant. Rogers v. Bemus, 69 Pa. 432; Brown v. Foster, 51 Pa. 165; Pittsburgh Coal Co. v. Foster, 59 Pa. 365; McConey v. Wallace, 22 Mo. App. 377.

As to the portion of the charge covered by the second assignment of error, there are two objections: First, interest is only chargeable from the time the principal became due, and it is admitted by both sides that the whole of the principal would not become due before the work was entirely finished. The evidence shows that the houses were considered ready for occupancy and were occupied when they were far from being entirely finished. The contract being for a finished and completed job, interest should only run from the time the work was finished and completed; and second, according to the testimony of Mr. Bedell, the balance of the contract price was not to be due until there was no possibility of liens against the property, and according to the evidence, claims for which liens could be filed did exist long after the houses were considered ready for occupancy, therefore the charge of the court takes from the jury (as far as the question of interest is concerned) all question as to whether or not the last payment was to be reserved until no liens could be filed.

As to the third assignment of error to the judge's charge where he says: "There are several gentlemen on the jury who are very familiar with building and with specifications—one especially who knows a great deal more than we do about this matter." The deliberations of the jury in the box should be free from any bias or influence save that of the evidence, the arguments of counsel and the charge of the court upon the law.

*W. B. Rogers* and *E. Edgar Galbreth,* for defendants in error.—Assuming that Errett & Davis had completed the house on August 1, they would have got their money, and Bedell would have got his rents. He would thus have his rents less the interest on his money. But the buildings were not completed. Errett & Davis paid his rents. There should then be deducted the interest on his money, and thus the net result to him would be the same as though the houses had been completed in time and he had paid his money.

If a possibility of liens existed to the amount of $1,000, Be-

dell could not ask to be allowed to retain $7,000 to cover them. So far as any possibility of liens existed, that was arranged, Bedell paying the amount, and no interest charged. The balance after payment of possible liens was part of the amount sued for; on that interest was chargeable, from the time the buildings were substantially finished or ready for occupancy.

PER CURIAM:

If we concede that there was error in the charge of the learned judge below, in regard to the matter of interest, it does not necessarily follow that the judgment must be reversed. It is only for serious error, such as would reasonably or probably affect the result, that we would be justified in disturbing the judgment. In this case the error was cured by the verdict. It is manifest that the jury have found that the buildings were not to be completed by August 1, 1883, as contended by defendant, and have rejected his claims for the loss of rents. We are unable to see, therefore, how he could have been injured by so much of the charge as is contained in the first and second assignments.

Nor is that portion of it embraced in the third and fourth assignments free from criticism. It might well have been omitted; it was not needed to throw light upon the case; yet we cannot say that it misled or was likely to mislead the jury, and it is certainly no ground of reversal.

Judgment affirmed.